**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 7** |
| | : | |
| **NATIONAL MEDICAL IMAGING, LLC** | : | **CASE NO. 08-17351(JKF)** |
| | : | |
| **Putative Debtor** | : | |
| | : | |
| **In re:** | : | **CHAPTER 7** |
| | : | |
| **NATIONAL MEDICAL IMAGING HOLDING COMPANY, LLC** | : | **CASE NO. 08-17348(JKF)** |
| | : | |
| **Putative Debtor** | : | |
| | : | |
| **NATIONAL MEDICAL IMAGING, LLC** | : | |
|   **and** | : | |
| **NATIONAL MEDICAL IMAGING HOLDING COMPANY, LLC** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **ADVERSARY NOS. 14-00250(JKF)** |
| | : | **and 14-00251(JKF)** |
| **U.S. BANK, N.A.** | : | |
| **LYON FINANCIAL SERVICES, INC.** | : | |
| **d/b/a  U.S. BANK PORTFOLIO SERVICES** | : | |
| **DVI RECEIVABLES XIV, LLC** | : | |
| **DVI RECEIVABLES XVI, LLC** | : | |
| **DVI RECEIVABLES XVII, LLC** | : | |
| **DVI RECEIVABLES XVIII, LLC** | : | |
| **DVI RECEIVABLES XIX, LLC** | : | |
| **DVI FUNDING, LLC** | : | |
| **ASHLAND FUNDING, LLC and JANE FOX** | : | |
| | : | |
| **Defendants** | : | |

## AMENDED COMPLAINT AND JURY DEMAND

I.    **INTRODUCTION**

    1.    Before they were destroyed by the wrongdoing alleged in this Complaint,

Plaintiffs National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding

Company, LLC ("NMIH")(collectively, the "Putative Debtors" and at times, the "Plaintiffs")

were diagnostic imaging companies headquartered in Philadelphia which provided through affiliates Open MRI, CT, PET scanning and other medical services at thirteen imaging centers.

2.      On November 7, 2008 (the "Petition Date"), the Defendants, acting unlawfully and in bad faith, filed involuntary bankruptcy petitions in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Pennsylvania Bankruptcy Court") against each of the Putative Debtors, docketed as Bankruptcy Case Nos. 08-17351 (JKF) and 08-17348 (JKF) (collectively, the "NMI Involuntary Bankruptcy Cases"), as well as an involuntary bankruptcy petition against Maury Rosenberg ("Rosenberg"), the Managing Member of the Putative Debtors and a co-guarantor for the alleged obligations upon which the three bankruptcy cases were premised (the "Rosenberg Involuntary Bankruptcy Case").[1]

3.      As of the Petition Date, the Putative Debtors were successfully implementing a turnaround plan and were poised for growth.    In the year preceding the Petition Date, the Putative Debtors had provided services to more than 29,000 patients, which had generated net billings in excess of $21 million and operating income in excess of $9.5 million.

4.      The Rosenberg Involuntary Bankruptcy Case was eventually dismissed by the Florida Bankruptcy Court,[2] and the NMI Involuntary Bankruptcy Cases were eventually dismissed by the Pennsylvania Bankruptcy Court.[3]    However, the commencement and

---

[1]      The Rosenberg Involuntary Bankruptcy Case was docketed as *In re Maury Rosenberg*, No. 08-17346 (Bankr. E.D. Pa.).  By Order entered January 30, 2009, the Rosenberg Involuntary Bankruptcy Case was transferred to the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court").

[2]      On August 21, 2009, the Florida Bankruptcy Court held that the Rosenberg Involuntary Bankruptcy Case had been filed and prosecuted unlawfully, and the bankruptcy case was dismissed *with prejudice*.  *See In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009).  The Rosenberg dismissal order was affirmed by a Florida district court, and the Eleventh Circuit.  *See In re Rosenberg*, 472 F. App'x 890 (11th Cir. 2012).

[3]      By Order (and Memorandum Opinion) entered December 28, 2009, the Pennsylvania Bankruptcy Court – applying principles of collateral estoppel in the context of the matters litigated in the Rosenberg Involuntary

prosecution of these bad-faith bankruptcy cases set in motion a chain of events which destroyed the Plaintiffs.

5.      In this litigation, Plaintiffs invoke 11 U.S.C. § 303(i)(1) and (2), and seek to recover against the Defendants, jointly and severally:  (i) compensatory damages in excess of $50 million; (ii) punitive damages in the amount to be determined by the jury; (iii) reasonable attorneys' fees and costs heretofore and hereafter incurred in connection with (a) the "bad faith" filing and prosecution of the now-dismissed involuntary bankruptcy petitions in the NMI Involuntary Bankruptcy Cases; (b) this litigation; and (c) the effort to recover and collect the attorneys' fees and costs to which they are entitled; (iv) pre- and post-judgment interest; and (v) such other and further relief as this Court deems just and appropriate.

6.      Succinctly summarized, the wrongdoing of the Defendants for which the Plaintiffs seek damages in this case included:

    a.    The filing and prosecution of the NMI Involuntary Bankruptcy Cases "in bad faith";

    b.    The filing and prosecution of multiple involuntary petitions by entities which were not creditors of the Putative Debtors, which were not the "real parties in interest," and which lacked standing to initiate or pursue the NMI Involuntary Bankruptcy Cases under applicable bankruptcy law;

    c.    The sham creation of six alleged creditors for the improper purpose of

---

Bankruptcy Case and the final judgment entered therein – held that the NMI Involuntary Bankruptcy Cases had been filed and prosecuted unlawfully, and dismissed the bankruptcy cases against the Putative Debtors *with prejudice*. *See In re National Medical Imaging*, LLC, 439 B.R. 837 (Bankr. E.D. Pa. 2009).   The Pennsylvania Bankruptcy Court retained jurisdiction but then stayed further proceedings in connection with the Putative Debtors' damage claims under 11 U.S.C. §§ 303(i)(1) and 303(i)(2).   By Orders entered May 2, 2014, the Pennsylvania Bankruptcy Court denied reconsideration and vacated the stay. While the stay in this case remained in effect, the Defendants herein (and/or those in privity with them) litigated and lost the bankruptcy damage claims asserted against them by Rosenberg in the Florida proceedings.  The issues related to the Defendants' "bad faith" in filing and prosecuting the bankruptcy cases and the Defendants' joint and several liability for damages in connection therewith have been tried to and determined by a jury and the Florida federal courts, and final judgments have been entered in favor of Rosenberg and against the Defendants herein (and/or those in privity with them), jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs under 11 U.S.C. §§ 303(i)(1) and 303(i)(2).

satisfying the numerosity requirement of 11 U.S.C. § 303(b), when in reality the alleged debt upon which the cases were commenced was a single debt owed to a single creditor who was not one of the Petitioning Creditors;

d.      The improper adoption of inconsistent positions in proceedings before the Pennsylvania Bankruptcy Court and those in another court, which – based on the application of judicial estoppel – prohibited the Petitioning Creditor Defendants from initiating or prosecuting the NMI Involuntary Bankruptcy Cases;

e.      The failure to conduct due diligence as to the facts or law surrounding the NMI Involuntary Bankruptcy Cases, including the failure to conduct a pre-filing investigation as to the number of creditors holding claims against the Putative Debtors; and,

f.      The improper filing and prosecution of the NMI Involuntary Bankruptcy Cases as a collection tactic to harass and cause embarrassment and economic ruin to the Putative Debtors, in an effort to extract more than what was owed in connection with a disputed debt.

7.      In light of the final judgments entered by the Pennsylvania Bankruptcy Court and the Florida federal courts, the Defendants' joint and several liability to the Plaintiffs under 11 U.S.C. §§ 303(i)(1) and 303(i)(2) has been established, and all that remains is the assessment of the monetary awards to which Plaintiffs are entitled for compensatory damages, punitive damages, reasonable attorneys' fees and costs.

## II.    THE PARTIES

### The Plaintiffs

8.      Plaintiff National Medical Imaging, LLC ("NMI") is a Pennsylvania limited liability company with a place of business at 1919 Walnut Street, Philadelphia, PA 19103.

9.      At all times material hereto, NMI was in the business of providing management, billing and collection services for diagnostic imaging centers, and was a limited partner in the limited partnerships (hereinafter, the "NMI LPs") which had owned and operated the imaging

centers.

10.     Plaintiff National Medical Imaging Holding Company, LLC ("NMIH") is a Pennsylvania limited liability company with a place of business at 1919 Walnut Street, Philadelphia, PA 19103.

11.     At all times material hereto, NMIH was a general partner of each NMI LP.

12.     At all times material hereto, Maury Rosenberg ("Rosenberg") was the Managing Member of NMI and NMIH (collectively, the "Putative Debtors"), and a co-guarantor for the alleged obligations that precipitated the NMI Involuntary Bankruptcy Cases and the Rosenberg Involuntary Bankruptcy Case.

**The Defendants**

13.     Defendant U.S. Bank, N.A. ("US Bank") is one of the nation's largest commercial banks and maintains a place of business at 425 Walnut Street, Cincinnati, OH 45202.  US Bank is the successor by merger to Defendant Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("Lyon").

14.     At all times material hereto, Defendant Lyon was a Minnesota corporation, with a place of business at 1310 Madrid Street, Marshall, MN 56258.  In or around January 2011, Lyon merged with US Bank, with US Bank as the surviving company.

15.     At all times material hereto, Defendant DVI Receivables XIV, LLC ("DVI XIV") was a Delaware limited liability company controlled by Lyon, who may be served with process c/o Lyon.

16.     At all times material hereto, Defendant DVI Receivables XVI, LLC ("DVI XVI") was a Delaware limited liability company controlled by Lyon, who may be served with process

c/o Lyon.

17.     At all times material hereto, Defendant DVI Receivables XVII, LLC ("DVI XVII") was a Delaware limited liability company controlled by Lyon, who may be served with process c/o Lyon.

18.      At all times material hereto, Defendant DVI Receivables XVIII, LLC ("DVI XVIII") was a Delaware limited liability company controlled by Lyon, who may be served with process c/o Lyon.

19.     At all times material hereto, Defendant DVI Receivables XIX, LLC ("DVI XIX") was a Delaware limited liability company controlled by Lyon, who may be served with process c/o Lyon.

20.     At all times material hereto, Defendant DVI Funding, LLC ("DVI Funding") was a Delaware limited liability company controlled by Lyon, who may be served with process c/o Lyon.  Defendants DVI XIV, DVI XVI, DVI XVII, DVI XVIII, DVI XIX and DVI Funding are collectively referred to in this Complaint as the "Original Petitioning Creditors" and said defendants, together with Defendant Ashland Funding, are referred to collectively as the "Petitioning Creditors."

21.     At all times material hereto, Defendant Ashland Funding, LLC ("Ashland Funding") was a Pennsylvania limited liability company controlled by Lyon, who may be served with process c/o Lyon.

22.     Defendant Jane Fox ("Fox") is an individual, who may be served with process c/o Lyon.  At all times material hereto, Defendant Fox was the Director of Operations for Lyon and she engaged in the wrongdoing alleged herein as an officer and/or agent for and on behalf of

Lyon.

### III.   JURISDICTION AND VENUE

23.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §

1334 and said proceeding arises under 28 U.S.C. § 157(b)(1).

24.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

25.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

26.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 303(i)(1),

303(i)(2), and Rule 9011 of the Federal Rules of Bankruptcy Procedure.

### IV.   FACTS

#### A.     The Now Dismissed Involuntary Bankruptcy Proceedings.

27.     On November 7, 2008 ("Petition Date"), the Original Petitioning Creditors filed

the NMI Involuntary Bankruptcy Cases against the Putative Debtors in the Pennsylvania

Bankruptcy Court.

28.      On the Petition Date, the Original Petitioning Creditors also filed the Rosenberg

Involuntary Bankruptcy Case in the Pennsylvania Bankruptcy Court against Rosenberg.

29.     On December 3, 2008, Rosenberg filed a motion to dismiss or, alternatively, to

transfer venue for the Rosenberg Involuntary Bankruptcy Case to the Florida Bankruptcy Court

and the Motion to Transfer Venue was granted by agreement of the parties.  By Order entered

January 30, 2009, the Rosenberg Involuntary Bankruptcy Case was transferred to the United

States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court")

and assigned Bankruptcy Case No. 09-13196-BKC-AJC.

30.     On December 4, 2008, the Putative Debtors filed Motions to Dismiss the NMI

7

Involuntary Bankruptcy Cases pursuant to Rule 1011(b) of the Federal Rules of Bankruptcy

Procedure and Rule 12 of the Federal Rules of Civil Procedure (the "Motion to Dismiss").

31.     By Order (and Memorandum Opinion) entered August 21, 2009, the Florida

Bankruptcy Court granted Rosenberg's motion to dismiss and dismissed the Rosenberg

Involuntary Bankruptcy Case *with prejudice*.  *See In re Rosenberg*, 414 B.R. 826 (Bankr. S.D.

Fla. 2009).

32.     By Order (and Memorandum Opinion) entered December 28, 2009, the

Pennsylvania Bankruptcy Court granted the Putative Debtors' Motion to Dismiss, and dismissed

the NMI Involuntary Bankruptcy Cases *with prejudice*.  *See In re Nat'l Med. Imaging, LLC*, 439

B.R. 837, 843 (Bankr. E.D. Pa. 2009).   By Order entered May 2, 2014, the Pennsylvania

Bankruptcy Court denied reconsideration of the dismissal order.

33.     By Order (and Memorandum Opinion) dated March 24, 2015, the District Court

affirmed the Pennsylvania Bankruptcy Court's dismissal of the NMI Involuntary Bankruptcy

Cases with prejudice, as well as its Order denying reconsideration.  *See DVI Receivables XIV,*

*LLC v. Nat'l Med. Imaging, Holding Co., LLC*, 2015 U.S. Dist. LEXIS 37489, at *47-*48 (E.D.

Pa. Mar. 24, 2015).

**B.     The Master Leases and the Subsequent Securitization Transactions**.

34.     DVI Financial Services, Inc. ("DVI Financial") was a finance company that

provided loans and lease financing to health care providers.

35.     Starting in November, 2000, the NMI LPs entered into various master leases and

equipment schedules (the "Master Leases") with DVI Financial for the purpose of financing the

acquisition of medical imaging and PET scan machines used at diagnostic imaging centers

8

operated by the NMI LPs.

36.    The Master Leases were part of securitization transactions involving DVI Financial and US Bank, as Trustee.

37.    The Master Leases were transferred and/or assigned by DVI Financial to other DVI related entities, and pledged to investors as collateral with Lyon acting as agent for US Bank.

38.    As security for the payment of the obligations of the NMI LPs under the Master Leases, Rosenberg was required to execute and deliver an individual limited guaranty to DVI Financial.  The Putative Debtors were also required to execute and deliver a guaranty to DVI Financial.

39.    At various times from 2000 to 2003, DVI Financial transferred and assigned the Master Leases and related assets to various affiliates, who then transferred and assigned the same to the Original Petitioning Creditors, who thereafter granted and assigned the same to the Trustee *i.e.*, US Bank, for the benefit of the bondholders who invested in the securitizations.

### C.    **The DVI Financial Bankruptcy**.

40.    On August 25, 2003, DVI Financial and two of its affiliates filed Chapter 11 bankruptcy petitions in Delaware, docketed as *In re DVI Financial Services, Inc.*, Case Nos. 03-12656 through 03-12658.  On February 3, 2004, the Delaware Bankruptcy Court approved a settlement agreement in which DVI Financial, among other things, assigned its servicing rights in connection with the Master Leases to Lyon.

41.    At all times material hereto, Lyon reported solely to US Bank, as Trustee, all of the funds collected on account of the Master Leases were delivered to US Bank, as Trustee, and

the Original Petitioning Creditors had no input, involvement or authority as to the Master Leases and the funds collected or disbursed on account thereof.

### D.      The First Bucks County Action.

42.      On December 19, 2003, Lyon declared the Master Leases to be in default and filed thirteen separate lawsuits in the Court of Common Pleas of Bucks County, Pennsylvania against each of the NMI LPs, along with the Putative Debtors and Rosenberg, as guarantors (the "First Bucks County Action").

### E.      The NMI 2005 Involuntary Bankruptcy Petitions and 2005 Settlement.

43.      On March 3, 2005, while the First Bucks County Action was pending, DVI XIX, DVI XVIII, and DVI XVII filed involuntary Chapter 11 petitions against the Putative Debtors in the Eastern District of Pennsylvania (the "2005 Involuntary Petitions").

44.      The Putative Debtors contested the 2005 Involuntary Petitions.

45.      On August 12, 2005, the Putative Debtors, affiliate National Medical Imaging of Broad Street, L.P. ("Broad Street"), Rosenberg, the NMI LPs and Lyon entered into a Settlement Agreement (the "Settlement Agreement") pursuant to which, among other things: (a) the Master Leases were consolidated into a single obligation owed to Lyon; (b) the Putative Debtors, Broad Street and Rosenberg were to execute new guaranties; and, (c) the Putative Debtors, Rosenberg (and others) were released from all obligations with the exception of those set forth in the Settlement Agreement.

46.      In connection with the Settlement Agreement, the Putative Debtors executed an Unconditional Continuing Guaranty (the "NMI Guaranty") for the Master Leases, as modified and consolidated by the Settlement Agreement, which required the Putative Debtors to execute a

10

confession of judgment in favor of Lyon as the agent.

47.    In connection with the Settlement Agreement, Rosenberg executed an Individual Limited Guaranty (the "Rosenberg Guaranty") for the Master Leases, as modified by the Settlement Agreement, which required Rosenberg to execute a confession of judgment in favor of Lyon as the agent.

48.    The NMI Guaranty and the Rosenberg Guaranty: (a) superseded and replaced all prior guarantees, which were to be marked by the Trustee and/or Agent as "Cancelled" and returned; and, (b) made absolutely clear that the obligations thereunder ran solely to Lyon as Agent (not to the Petitioning Creditors) and could be enforced solely by Lyon as Agent (not by the Petitioning Creditors).

**F.    The Purported Default That Precipitated the 2008 Bankruptcy Cases**.

49.    On July 31, 2008, Lyon, as agent for US Bank, filed a complaint in confession of judgment in favor of Lyon and against the Putative Debtors, Rosenberg and others in the Court of Common Pleas of Bucks County, Pennsylvania (the "Second Bucks County Action") alleging defaults under the Settlement Agreement, Master Leases, Rosenberg Guaranty and NMI Guaranty. As a result, Judgment was promptly entered in varying amounts in favor of Lyon and against the Putative Debtors, Rosenberg and the other defendants.

50.    On August 22, 2008, the Putative Debtors, Rosenberg and the other defendants filed a petition to strike or open the confessed judgment in the Second Bucks County Action.

51.    On August 28, 2008, the Bucks County Court stayed execution on the confessed judgment.

52.    On September 11, 2008, Lyon filed a response to the petition to strike or open,

denying the allegations but acknowledging that the amount of the confessed judgment against the Putative Debtors and Rosenberg was overstated by $58,351.40.

G. **The Bad Faith Commencement of the 2008 Involuntary Bankruptcy Cases**.

53.     On November 7, 2008, the Petition Date, the Original Petitioning Creditors filed two involuntary petitions in this Court against the Putative Debtors in the NMI Involuntary Bankruptcy Cases, and an involuntary petition in this Court against Rosenberg in the Rosenberg Involuntary Bankruptcy Case.   The Petitioning Creditors amended the involuntary petitions against the Putative Debtors three times: on November 10, 2008; April 10, 2009; and August 26, 2009.  Ashland Funding replaced DVI Funding as a petitioning creditor in the second amended involuntary petition.

54.     The involuntary petitions were signed by Defendant Fox, who was not an officer, director, employee or agent of the Petitioning Creditors.  Rather, at all times material hereto, Defendant Fox was the "Director of Operations" for Lyon, on whose behalf she was acting.

55.     At all times material hereto, the Original Petitioning Creditors were merely "special purpose" pass-through entities for the securitization transactions, with five of six petitioning creditors having been administratively dissolved and their corporate good standing having lapsed.  As such, they filed no tax returns and had no employees, offices or assets.

56.     Prior to signing the involuntary petitions, Defendant Fox did not know the identity of the officers or directors of the Original Petitioning Creditors, nor had she, or anyone else at Lyon, ever spoken to, e-mailed, or corresponded with any of the Original Petitioning Creditors.

57.     There was no meeting of the directors or officers of the Original Petitioning

12

Creditors to authorize Defendant Fox to sign the involuntary petitions on their behalf.

58.    At all times material hereto, none of the Original Petitioning Creditors had authority to commence or prosecute the Rosenberg Involuntary Bankruptcy Case or the NMI Involuntary Bankruptcy Cases, with any such authority residing – if at all – solely in Lyon.  In fact, Defendant Fox has conceded that only she, as the Director of Operations for Lyon, had the authority to sign the involuntary bankruptcy petitions and none of the Original Petitioning Creditors had the authority to do so on their own behalf.

59.    Prior to the commencement of the Rosenberg Involuntary Bankruptcy Case and the NMI Involuntary Bankruptcy Cases, Defendant Fox conducted no due diligence or other investigation (a) to determine the number of creditors of the Putative Debtors or Rosenberg, (b) to determine whether the Petitioning Creditors were in fact creditors of the Putative Debtors or Rosenberg, or (c) to determine whether there was a *bona fide* dispute as to the obligations at issue.

60.    At all times material hereto, there was no guaranty executed by the Putative Debtors in favor of the Petitioning Creditors, and none of the Petitioning Creditors was in fact a creditor of the Putative Debtors.

61.    At all times material hereto, the Petitioning Creditors were merely "special purpose" pass-through entities, rather than "real parties in interest."  As such, the Petitioning Creditors had no right or standing as a matter of law to commence or prosecute the NMI Involuntary Bankruptcy Cases.

62.    In light of the actions taken and positions asserted by Lyon in the Second Bucks County Action, the Petitioning Creditors were judicially estopped from commencing or

prosecuting the NMI Involuntary Bankruptcy Cases.

63.    The involuntary petitions in the NMI Involuntary Bankruptcy Cases were filed by the Original Petitioning Creditors rather than by Lyon, the agent (a single entity), to artificially create six creditors for the improper purpose of attempting to satisfy the numerosity requirement of Section 303(b) of the Bankruptcy Code.

64.    The NMI Guaranty ran exclusively to Lyon, and the Petitioning Creditors did not have separate and distinct claims against the Putative Debtors for purposes of Section 303(b) of the Bankruptcy Code.

65.    The Settlement Agreement was a novation which eliminated any obligations of the Putative Debtors to the Petitioning Creditors and replaced them with a single obligation to Lyon, the agent.

66.    At all times material hereto, if the Petitioning Creditors had any claims against the Putative Debtors – which they did not – such claims were contingent and subject to *bona fide* disputes.

67.    At all times material hereto, Defendant Fox acted within the scope of her employment as Director of Operations with Lyon.  In that position, Defendant Fox, as an officer of Lyon, executed the original and amended involuntary bankruptcy petitions at issue here and caused the filing of the NMI Involuntary Bankruptcy Cases.

68.    At all times material hereto, Defendant Lyon acted on behalf of Defendant US Bank, the Trustee for the securitized transactions that gave rise to the NMI Involuntary Bankruptcy Cases.  In that position, Defendant Lyon, openly acting on behalf of Defendant US Bank, was responsible for the filing of the original and amended involuntary bankruptcy

petitions that were signed by Defendant Fox, its Director of Operations, in her professional capacity.

69.     At all times material hereto, Defendants Fox, Lyon and US Bank were intertwined. Pursuant to agency law and the doctrine of respondeat superior, Fox, as the officer and/or agent of Lyon, bound Lyon and US Bank.

70.     At all times material thereto, Defendants Fox, Lyon and US Bank were *de facto* petitioning creditors.  *See In re Rosenberg*, 779 F.3d 1254, 2015 U.S. App. LEXIS 3040, at \*35-\*36 (11th Cir. Fla. Feb. 27, 2015).

71.     As a result of the relationships between the parties, as aforesaid, including the merger of Lyon into US Bank, the Defendants are jointly and severally liable to the Plaintiffs in connection with the claims alleged and damages sought in this litigation.

72.      The NMI Involuntary Bankruptcy Cases were commenced and prosecuted in bad faith.

73.     At all times material hereto, the Defendants acted knowingly, intentionally and in reckless disregard for the rights of the Plaintiffs.

74.     As a result of the wrongdoing of the Defendants, the Plaintiffs' valuable businesses were destroyed because, among other reasons, the commencement and continued prosecution of the involuntary bankruptcy cases: (1) caused Plaintiffs to lose preferred provider status with major insurers; (2) caused physicians to lose confidence in the Plaintiffs' stability and to divert their patients to other providers; (3) caused lenders to cutoff the Plaintiffs' access to receivables, thereby creating a liquidity crisis; (4) caused vendors to put the companies on a COD basis, thereby further eroding cash and liquidity; and (5) destroyed Plaintiffs' reputations in

the community, and torpedoed planned acquisitions and expansion.

75.     As a result of the wrongdoing of the Defendants, the Plaintiffs have suffered

damages which have yet to be fully ascertained or quantified, but which exceed fifty million

dollars.

76.     As a result of the wrongdoing of the Defendants, the Plaintiffs have incurred and

will continue to incur attorneys' fees and costs arising out of the now dismissed NMI Involuntary

Bankruptcy Cases, and the prosecution of this case.

**H.     The Final Judgments Which Establish Liability Here.**

**i.     Judgments Arising Out Of The Rosenberg Involuntary Bankruptcy.**

77.     On August 21, 2009, the Florida Bankruptcy Court dismissed *with prejudice* the

Rosenberg Bankruptcy Case based on, *inter alia*, the following grounds:

a.     First, because "there is no guaranty executed by Rosenberg in favor of any of the Original Petitioning Creditors or Ashland Funding," none of these alleged creditors was in fact a creditor of Rosenberg. *In re Rosenberg*, 414 B.R. 826, 840 (Bankr. S.D. Fla. 2009). That is, the Rosenberg Guaranty runs "solely in favor of, Lyon in its capacity as successor servicer and as agent for" US Bank. *Id*.

b.     Second, the Original Petitioning Creditors and Ashland Funding were  merely "special purpose entities" rather than "real parties in interest" and were therefore not entitled to assert any claims against Rosenberg. *Id*. at 841. Because these petitioners were nothing more than "pass through entities," an "actual injury" cannot be remedied by the petitions. *Id*. at 841-842. Therefore, the Original Petitioning Creditors and Ashland Funding Creditors "lack[ed] standing as a matter of law" to pursue Rosenberg in bankruptcy. *Id*. at 842.

c.     Third, the Original Petitioning Creditors are "judicially estopped from prosecuting this involuntary bankruptcy case against Rosenberg." *Id*. at 842. In July 2008, Lyon – not the Original Petitioning Creditors and Ashland Funding – filed the Second Bucks County Action. *Id*. at 842. Nevertheless, in November 2008, the Original Petitioning Creditors filed the Involuntary Petition at hand. *Id*. Therefore, Lyon, and the Original Petitioning Creditors on whose behalf the Lyon representative signed the involuntary bankruptcy petition, is "judicially estopped from adopting a different position in this case." *Id*. at 843.

16

    d.      Fourth, the Rosenberg Guaranty runs exclusively to Lyon and the Original Petitioning Creditors and Ashland Funding do not have "separate and distinctive claim[s]" under the Rosenberg Guaranty for purposes of 11 U.S.C. § 303(b).  *Id.*

    e.      Fifth, the Settlement Agreement was deemed to be a novation – "a mutual agreement between the parties to discharge a valid existing obligation by the substitution of a new valid obligation."  *Id.*   The creation of the novation "replaced and superseded" any individual obligations owed to the Original Petitioning Creditors and replaced them with a single obligation owed to Lyon, the agent.  *Id.* at 844.

78.    The Florida District Court affirmed the findings and judgment of the Florida Bankruptcy Court in all but one respect, and then the Eleventh Circuit affirmed the Florida District Court in all respects:

> . . . [a]fter an evidentiary hearing and exhaustive briefing, the bankruptcy court granted Rosenberg's motion to dismiss the involuntary bankruptcy case, concluding that the Plaintiff-Appellants were not real parties in interest for numerous reasons (including having no financial interest in the case) and thus lacked standing to pursue the asserted claims as petitioning creditors.

> In its order filed on September 28, 2011, the district court affirmed the bankruptcy court's dismissal of the involuntary petition with prejudice.  Although the district court disagreed with one of the reasons given by the bankruptcy court for the dismissal, the district court agreed with all of the other findings and grounds for dismissal outlined in the bankruptcy court's 34-page order, which the district court commended as 'well-reasoned.'

> After careful review, we conclude that the Plaintiff-Appellants have not shown reversible error in the district court's September 28, 2011 order.  The district court's judgment is affirmed.

*See In re Rosenberg*, 472 F. App'x 890, 891 (11th Cir. 2012).

79.    After the Rosenberg Involuntary Bankruptcy Case was dismissed, Rosenberg litigated in Florida his claims for damages pursuant to 11 U.S.C. §§ 303(i)(1) and 303(i)(2). Rosenberg asserted claims against, among others, the Original Petitioning Creditors, US Bank, Lyon and Fox (who was eventually dropped as a defendant when the parties stipulated that she

acted within the scope of her authority as an agent for Lyon).

80.     Rosenberg's claims for attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1) were adjudicated in the first instance before the Florida Bankruptcy Court.  Rosenberg's claims for compensatory and punitive damages pursuant to 11 U.S.C. § 303(i)(2) were tried to a jury in the district court.

81.     Rosenberg prevailed on his claims for attorneys' fees and costs under § 303(i)(1), as well as on his claims for damages under § 303(i)(2).

82.     Succinctly summarized, final judgment has been entered in favor of Rosenberg, and against the Original Petitioning Creditors and US Bank, jointly and severally, for: (a) attorneys' fees and costs under 11 U.S.C. § 303(i)(1);[4] and (b) compensatory damages under 11 U.S.C. § 303(i)(2) based on the jury's finding that the filing was in "bad faith."[5]

---

[4]     Although there are a number of judgments and opinions establishing the liability of the Original Petitioning Creditors and US Bank to Rosenberg – and by application of collateral estoppel – the liability of the Defendants herein to the Putative Debtors, the following are sufficient to confirm the point: (1) *In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009) (dismissing the Rosenberg Involuntary Bankruptcy Case *with prejudice*); (2)    *In re Rosenberg*, 472 F. App'x 890 (11th Cir. 2012) (affirming the district court, which had affirmed the dismissal in all but one respect); (3) *DVI Receivables XIV, LLC v. Rosenberg*, 500 B.R. 174 (S.D. Fla., September 24, 2013) (affirming bankruptcy court's finding that Lyon was jointly and severally liable with the Original Petitioning Creditors for damages under 11 U.S.C. § 303(i)(1)); and (4) *In re Rosenberg*, 779 F.3d 1254 (11th Cir. 2015) (affirming award of attorneys' fees and costs for obtaining dismissal of involuntary cases and defending dismissal on appeal, and affirming recoverability of fees for prosecuting bad faith damages claim, but reversing and remanding fee award regarding bad faith claims as premature).

[5]     On March 14, 2013, in accordance with the verdict of a Florida jury, Final Judgment was entered in favor of Rosenberg and against the Original Petitioning Creditors and US Bank, jointly and severally, for $6,120,000, representing the award of compensatory damages and punitive damages under 11 U.S.C. § 303(i)(2).  On September 29, 2014, the Florida District Court entered an order granting in part and denying in part the defendants' Rule 50(b) motion, in which it affirmed jury's liability verdict, bad faith findings and compensatory damages for emotional distress, while setting aside certain elements of the jury's verdict not relevant to the Plaintiffs claims here.

### ii.   The Judgment Dismissing The NMI Involuntary Bankruptcy Cases.

83.    By Order (and Memorandum Opinion) entered December 28, 2009, the

Pennsylvania Bankruptcy Court dismissed the involuntary petitions against the Putative Debtors

in the NMI Involuntary Bankruptcy Cases, *with prejudice:*

> . . . [t]he second prong of the four-part collateral estoppel test at issue here is
> whether the dispute presented in this involuntary petition and those determined by
> Judge Cristol's Opinion are identical . . .  In my discussion below, I compare the
> holdings in Judge Cristol's Opinion with the issues presented in the involuntary
> petitions before me.  Through that comparison, **I have determined that at least
> three of the six alternative holdings of Judge Cristol's Opinion overlap
> substantially in the realm of evidence, facts, and law with the evidence, facts,
> and law inherent in the litigation here.** Collateral estoppel therefore applies and
> I will dismiss the involuntary petitions before me with prejudice . . . .

*See In re National Medical Imaging, LLC*, 439 B.R. 837, 848 (Bankr. E.D. Pa. 2009) (**emphasis**

**added**).[6]  The dismissal was affirmed by the District Court on March 24, 2015.  *See DVI*

*Receivables XIV, LLC v. Nat'l Med. Imaging, Holding Co., LLC*, 2015 U.S. Dist. LEXIS 37489,

at *47-*48 (E.D. Pa. Mar. 24, 2015).

84.    In light of the final judgments entered by the Pennsylvania and Florida federal

courts, the Defendants' joint and several liability to the Plaintiffs under 11 U.S.C. §§ 303(i)(2)

and 303(i)(1) has been established.

---

[6]      In denying reconsideration, the Pennsylvania Bankruptcy Court reaffirmed the dismissal order, relying on
two of the six alternative holdings of Judge Cristol.  Because the district court opinion affirming Judge Cristol's
dismissal order did not reach the issue of judicial estoppel, this Court no longer gave preclusive effect to the judicial
estoppel finding.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### COMPENSATORY AND PUNITIVE DAMAGES UNDER 11 U.S.C § 303(i)(2)

85.    The averments set forth in paragraphs 1 through 83 above are incorporated herein by reference, as if fully set forth.

86.    For the reasons previously set forth, the NMI Involuntary Bankruptcy Cases were commenced and prosecuted in bad faith, with the Defendants acting knowingly, intentionally and in reckless disregard for the rights of the Plaintiffs.

87.    As a result of the wrongdoing of the Defendants as aforesaid, the Plaintiffs' valuable businesses were destroyed and they have suffered damages which have yet to be fully ascertained or quantified, but which exceed fifty million dollars.

88.    Pursuant to 11 U.S.C. § 303(i)(2), the Putative Debtors are entitled to recover against the Defendants, jointly and severally, (a) compensatory damages for all damages caused by the bad faith filing and prosecution of the NMI Involuntary Bankruptcy Cases, and (b) punitive damages in the amount determined by the jury as appropriate to punish the Defendants and deter the Defendants and others from engaging in such wrongdoing.

**WHEREFORE,** the Putative Debtors demand the entry of judgment in their favor and against the Defendants, jointly and severally, for: (i) compensatory damages in excess of fifty million dollars; (ii) punitive damages in the amount determined by the jury as appropriate to punish the Defendants and deter the Defendants and others from engaging in such wrongdoing; (iii) pre- and post-judgment interest; and, (iv) such other and further relief as this Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF

## ATTORNEYS' FEES AND COSTS UNDER 11 U.S.C § 303(i)(1) AND RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

89.     The averments set forth in paragraphs 1 through 87 above are incorporated herein by reference, as if fully set forth.

90.     The NMI Involuntary Bankruptcy Cases were dismissed *with prejudice* and without the Putative Debtors' consent or waiver of their right to recovery under 11 U.S.C. §§ 303(i)(1) and 303(i)(2).

91.     Pursuant to 11 U.S.C. § 303(i)(1), the Putative Debtors are entitled to recover against the Defendants, jointly and severally, the reasonable attorneys' fees and costs heretofore and hereafter incurred in connection with: (a) the NMI Involuntary Bankruptcy Cases; (b) this litigation; and, (c) the effort to recover and collect the attorneys' fees and costs to which they are entitled.

92.     Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, involuntary petitions may be signed, filed and prosecuted only when, to the best of the signor's knowledge, information and belief formed after a reasonable inquiry, such petitions are well grounded in fact and warranted by existing law.

93.     For the reasons previously set forth, the involuntary petitions in the NMI Involuntary Bankruptcy Cases were signed, filed and prosecuted in violation of Rule 9011, thereby entitling the Putative Debtors to recover against the Defendants, jointly and severally, the reasonable attorneys' fees and costs heretofore and hereafter incurred in connection with the NMI Involuntary Bankruptcy Cases, this litigation, and the effort to recover and collect the attorneys' fees to which they are entitled in connection therewith.

**WHEREFORE,** the Putative Debtors demand the entry of judgment in their favor and against the Defendants, jointly and severally, for: (i) the reasonable attorneys' fees and costs heretofore and hereafter incurred in connection with (a) the NMI Involuntary Bankruptcy Cases, (b) this litigation, and, (c) the effort to recover and collect the attorneys' fees and costs to which they are entitled; (ii) pre- and post-judgment interest; and, (iii) such other and further relief as this Court deems just and appropriate.

## VI.   <u>JURY DEMAND</u>

The Plaintiffs demand a jury trial in connection with their claims for compensatory damages and punitive damages under 11 U.S.C. § 303(i)(2).  The Plaintiffs do not consent to a jury trial in the Bankruptcy Court.

**KAUFMAN, COREN & RESS, P.C.**

 /s/
STEVEN M. COREN
DAVID M. DeVITO
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
(215) 735-8700

and

ARIS J. KARALIS
FRANK S. MARINAS
**MASCHMEYER KARALIS P.C.**
1900 Spruce Street
Philadelphia, PA  19103
(215) 546-4500

Dated: May 14, 2015          Attorneys for Plaintiffs

22